515 A.2d 477

Andre WRIGHT

v.

STATE of Maryland.

No. 1603, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Oct. 9, 1986.

Melissa M. Moore, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Michael Flannery, Asst. State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before WILNER, BISHOP and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

In this case, the trial date, being more than the 180 days after the first appearance of counsel, was first advanced to the 180th day and then returned to the original date. Citing this unusual series of events, Andre Wright, appellant,

presents but one question on this appeal from the judgment of the Circuit Court for Baltimore City:

Did the trial court err in denying appellant's motion to dismiss for failure to comply with Md. Rule 4–271?

Under the circumstances of this case, we do not think so. We will therefore affirm.

Appellant was charged on May 23, 1985, by way of criminal information, with assault with intent to rob and related counts. Although appellant was not present, counsel entered his appearance on appellant's behalf in the Circuit Court on June 19, 1985 and, on the same date, provided the court with a new address for appellant. Counsel also filed a Motion for Speedy Trial. The case was set in for rearraignment on July 12, 1985, on which date appellant was arraigned, entered a plea of not guilty and received a trial date of October 3, 1985.

Appellant failed to appear for the trial date, but no bench warrant was issued. The docket entry for that date reflects the following notation: "Referred to Admin. Judge—must be rearraigned CAO [Criminal Assignment Office] set for rearrg. H. Caplan, J." On October 18, 1985, the date set for rearraignment, the trial date was rescheduled to December 20, 1985. Appellant apparently was not present at rearraignment either.

No further activity occurred in this case until December 13, 1985, when the assistant State's Attorney and Mr. Yankellow of the Public Defender's Office, appeared before Judge Angeletti, acting Administrative Judge. Appellant, who had not been advised of the hearing, was not present. At that time the State requested, in the alternative, that the case be set for an immediate trial on that day, or that good cause be found for the case to remain on the docket as scheduled. Pointing out that December 20, 1985 was more than 180 days from the date appellant's counsel entered his appearance and that December 16 would be the 180th day, the State proffered in support of its request that: (1) it had

only that morning discovered the *Hicks* problem;[1] (2) it did not wish to deprive appellant of his right to be tried within 180 days; and (3) the State was prepared for trial.

Appellant's counsel objected to both requests, noting specifically that appellant had never been served to appear for the hearing and was not, in fact, present. When, however, the court expressed its inclination to move the case forward to December 16th, appellant's counsel, in addition to the reasons already given, expressed concern about his ability to prepare for trial on the advanced trial date. Nevertheless, the court moved the trial date forward to December 16th, placing the burden of notifying appellant and his bondsman on appellant's counsel, a burden counsel disputed the court had authority to impose. Although invited to move for a continuance either immediately or on the reset trial date, appellant's counsel refused to do so, explaining, "I can't make a motion without the defendant present, your Honor."

The matter was again before the Administrative Judge on December 16, 1985, in the late afternoon. Appellant was again not present. After reviewing the background as presented by counsel,[2] the Administrative Judge found good cause to postpone the case from December 16, 1985 to December 20, 1985, the date on which the case had originally been scheduled. His rationale for doing so may be gleaned from the following colloquy:

> MR. YANKELLOW: I assume that he was never officially notified of the trial today.
>
> THE COURT: But he was notified of 12/20/85, but he was not notified of today's date. Is that what the problem is?

---

1. *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979), which, interpreting former Md.Rule 741, held mandatory the rule that the trial date in a criminal case be set not later than 180 days after appearance of counsel or the first appearance of the defendant and that the trial date, once set, not be postponed except for good cause.

2. In addition to Mr. Yankellow, appellant's assigned Public Defender, Bridget Shepherd, was present.

MS. SHEPARD: That's correct, your Honor.

THE COURT: Well, I find good cause to continue it till the 20th of December, 1985, and I will give it priority for that date.

MR. YANKELLOW: Of course, your Honor, we would object because the 20th at that point, without anybody being properly served, putting the case in today to preserve Hicks without the defendant, I don't understand. So whatever somebody does, I think it's wrong.

THE COURT: Wrong to do what?

MR. YANKELLOW: To think it was wrong to advance the date here. You know, renewing my objection to maybe Judge Angeletti.

THE COURT: You're complaining about the Court advancing the date to the 17th, I mean, to the 16th?

MR. YANKELLOW: Yes.

THE COURT: Now, you're complaining about putting it back to where it was.

MR. YANKELLOW: I want to preserve whatever rights the defendant or the bondsman might have, if your Honor please, because you're now finding good cause again without the presence of the defendant, and putting it onto the 20th.

THE COURT: You know, if there's a real problem on that, if you're going to complain about that, it seems to me you can't have it both ways. If you are going to complain about it, I'll make sure this case goes out tomorrow morning and there will be a defendant here.

When the case was called for trial on December 20, 1985, appellant moved to dismiss for failure to comply with Md. Rule 4–271. Before ruling on the motion, the trial judge was apprised of the history of the case by appellant's counsel and the State, and he took testimony from two members of the Sheriff's Office. One deputy sheriff testified to having received in his office on Friday, December 13, 1985, a batch of summonses to be delivered to Fred Frank, Bondsman. Among that batch was a handwritten one, notifying appellant to appear for trial on December 16,

1985. That summons, the only handwritten one he recalled receiving on that day, was delivered to the bondsman's office on Saturday, December 14, 1985. The deputy could not testify on personal knowledge that the responsible bondsman received the summons. The other deputy sheriff testified to delivering a summons for appellant to appellant's last known address and leaving it with a woman who answered the door. He further advised the court that, in addition to acknowledging that the address was that of appellant, in response to his statement that the summons was for a trial date on Monday, December 16th, the woman said, "He already knows about that".[3]

The trial judge ruled:

... My decision is to affirm, and in effect or to concur with the Administrative Judge's decision in the case, A, because I think he has responsibility to make that decision and, B, because I think I see in between the lines and agree with what he must have seen too; that is, the spirit of the rule clearly is complied with here. I think thus as well its letter.

We have here a situation where the State's Attorney did notice in time, so the State, so to speak, at the last minute, perhaps, that the trial date of December 20 went beyond the Hicks period and did begin operating on behalf of the State to scurry around to give the defendant his due under the rules and under the statute and under the Constitution, and the administrative machinery of the court responded positively to that effort to assure this defendant that he would get what he wished, and that is a rule there is a trial within the Hicks period. At that point in time, the State is complying with a Hicks mandate. It is struggling, bending over backwards running from courtroom to courtroom in a frenzy, administrative frenzy

---

**3.** This statement was admitted over appellant's objection. The court explained, "I won't accept it for the truth of the actual statement, that is to say, whether or not the defendant knew about it, but I will accept the statement solely as a confirmation that the service was upon the proper home."

so to speak, to comply. In a sense I am pointing out how ludicrous this issue can become. We all know that the whole point of this rule is to ensure defendants of a trial within a reasonable period of time before witnesses' memories have faded and because he is a citizen whose liberty is at risk. For no other reason than that, he or she deserves a prompt trial. The State is scurrying to do that.

Now, as a consequence of the scurrying and we are talking here about scurrying to bring the trial date from the 20th, which itself is a more than reasonable trial date after Mr. Deise's appearance, although obviously it falls several days beyond the technical requirement, but in this case to comply to the letter as well as to the spirit of Hicks, the State was unable to find defendant to get the notice to him that, yes, your counsel's strenuous request for a speedy trial—although, the State is not necessarily conceding that you are requesting a speedy trial, you are more or less taking advantage of the State's failure to schedule it properly. . . .

Addressing the issue of service, the judge stated:

I am in a particular context now of the Hicks context. What I am looking for is whether or not the State has brought this defendant to trial within the time prescribed. That is the issue and the answer is yes. Judge Angeletti who has the authority to do so, set the trial in on a particular date. The State was prepared to go forward to trial. A subsiduary issue is whether or not the State in a sense to add credibility to its efforts made a reasonable effort to make sure that the defendant knew that this was his trial date. Putting it differently, if we had a fact situation here where Mr. Flannery came in and said, well, Judge Angeletti set this case in for the 16th, the 13th of December for the 16th of December, and I said back to him, well, now, that is fine, what did you do to accomplish notice to the defendant, and the answer was nothing, we didn't think about that, Your Honor, that would indicate to me an absence of good faith on the part of the State

and to the extent that had legal relevance it is not clear except in my own sense of what is just in interpreting Hicks' philosophy and rule. So it is in that context that I am taking this kind of testimony.

\* \* \* \* \* \*

The judge also noted the absence of any evidence of prejudice to appellant as a result of either the change of the trial date or, interpreting *Hughes v. State*, 288 Md. 216, 421 A.2d 69 (1980), appellant's absence from the hearing before the Administrative Judge at which the change was ordered.

 Maryland Rule 4–271(a) requires that

The date for trial in the Circuit Court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the Circuit Court pursuant to Rule 4–213, and shall be not later than 180 days after the earlier of those dates. On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date.

The State bears the burden of ensuring that appellant is brought to trial within 180 days. *Goins v. State*, 293 Md. 97, 109–10, 442 A.2d 550 (1982). Because the requirements of the Rule are mandatory, the State's failure to comply with its dictates will ordinarily result in dismissal of the charging document. *State v. Hicks*, 285 Md. 310, 318, 403 A.2d 356 (1979); *State v. Green*, 54 Md.App. 260, 264, 458 A.2d 487 (1983), *aff'd* 299 Md. 72, 472 A.2d 472 (1984). Not every violation of the Rule, however, mandates reversal of a conviction. *Farinholt v. State*, 299 Md. 32, 40–41, 472 A.2d 452 (1984); *State v. Frazier*, 298 Md. 422, 428, 470 A.2d 1269. It is only the postponement, without good cause, which results in the setting of the trial date beyond the 180 day limit to which the dismissal sanction applies. *State v. Hicks, supra*, 285 Md. at 316–18, 403 A.2d 356. *See Farinholt, supra* and *Frazier, supra.*

Appellant argues that the State failed to meet its burden to assure that appellant was brought to trial within 180 days. Appellant's argument is prompted largely by the

unique feature of this case: although the trial date was postponed on two occasions within a seven day period, the same trial date existed both before and after the postponements were granted. Equally as important is the circumstance that the State's efforts to bring the trial date in compliance with Md.Rule 4–271 did not occur until late in the 180 day period, in appellant's words "[b]ecause of the intervening weekend, effectively the day before the 180th day". Moreover, the State's failure to notify appellant of either the hearing on December 13th, when the trial date was moved forward, or the one on December 16th, when it was moved back is for appellant, significant. In his view, "the State's actions on December 13, which resulted in the case being moved from December 20 to December 16, were nothing more than an empty gesture of compliance with the requirements of Rule 4–271 and the subsequent postponement on December 16 was not for good cause." He believes that *Curley v. State*, 299 Md. 449, 474 A.2d 502 (1984) presents an analogous situation.

Before proceeding further, it should be determined if, as appellant asserts, *Curley v. State, supra*, is controlling. In *Curley*, the State nolle prossed the charges against the accused on the 180th day, citing as reasons, "the apparent inadmissibility of the blood alcohol test … and … the request made of the State by the family of the victim." *Id.* 299 Md. at 453, 474 A.2d 502. At that time no trial date had been scheduled and, as in this case, the accused was not present. Three months later, the identical charges to those nolle prossed were refiled. On the appeal from the trial court's denial of his motions to dismiss for failure to comply with Maryland Rule 746, the predecessor of 4–271, the Court of Appeals held:

> [W]hen a circuit court criminal case is nol prossed, and the state later has the same charges refiled, the 180–day period for trial prescribed by §§ 591 [Md.Code Ann., art. 27] and Rule 746 ordinarily begins to run with the arraignment or first appearance of defense counsel under the second prosecution. If, however, it is shown that the

nol pros had the purpose or the effect of circumventing the requirements of § 591 and Rule 746, the 180–day period will commence to run with the arraignment or first appearance of counsel under the first prosecution.

*Id.* at 462, 474 A.2d 502. The Court found the facts there presented to have the effect of circumventing the 180 day period.

While we do not think it controlling, *Curley* is certainly instructive. The dismissal sanction would apply under *Curley* only if the State acted in bad faith in seeking to postpone the case to December 16th or the necessary effect of that action was to violate the 180 day deadline. *Id.* If, however, the State acted in good faith and the necessary effect of its action was not to violate the 180 day deadline, dismissal would not be warranted.

Both appellant and the State perceive the December 16th postponement as the critical one. This is true because it had the effect of again setting the trial date beyond the 180 day deadline. And while they disagree as to whether the dismissal sanction should apply to that postponement, they both may nevertheless be right. The postponement which had the effect of initially setting the trial date beyond the 180 day deadline was the one which extended the October 3rd trial date. This was done by Criminal Assignment on October 18th, after appellant failed to appear for his October 3rd trial date and the case had been set in for rearraignment.[4] It may be concluded that the trial date set violated Rule 4–271 in at least two respects: (1) it was not set by the administrative judge and (2) the record does not disclose any good cause basis either for the postponement or its length. The State acted, however, prior to the trial date

---

4. The role, if any, played by the administrative judge in this decision is unclear. Although the October 3rd docket entry reflects a referral of the case to the administrative judge and the notation, "CAO set for rearrg", no such reference is contained in the October 18, 1985 entry, which simply states, "Set for trial 12/20/85 pt 6." Nor is it ascertainable from the record whether appellant or his counsel was present on October 18th or consented to the trial date set. *See Hicks, supra* and *State v. Lattisaw,* 48 Md.App. 20, 28–29, 425 A.2d 1051 (1981). Final-

being reached. Its request for an immediate trial resulted in a change in the trial date forward to a date within the Rule. Since it is the failure to try the case within 180 days, not the mere setting of the trial date, that is important, this removed the October 3rd postponement from the "critical postponement" status. *See State v. Harris,* 299 Md. 63, 66–67, 472 A.2d 467 (1984); *Farinholt,* 299 Md. at 40–41, 472 A.2d 452. We do not read the cases as preventing the correction of a violation of the Rule.

The movement of the trial date from December 20th to December 16th certainly cannot be the "critical postponement." Rather than having the effect of setting the trial date beyond the 180 day limit, that change of the trial date had the effect of bringing the trial date back into compliance, although just barely so, with the Rule. Therefore, the dismissal sanction does not apply to it, whether or not there was a violation of the Rule when that change in trial date was ordered.

On the other hand, the December 16th postponement reinstated the trial date originally set on October 18th. Since it changed the trial date to a date more than 180 days from the entry of appearance of appellant's counsel, whether good cause existed to support that postponement was once again a viable issue, and, indeed, an important one. It is not, however, the most critical issue. Although not subject to analysis in the manner usually employed in Rule 4–271 cases, the State's December 13th postponement request and its subsequent granting are the critical actions. This is so because they must, as a threshold matter withstand scrutiny under *Curley.* If they do, the December 16th postponement then becomes the critical one.

Applying *Curley,* it is crystalline that the State's request to change the trial date was prompted by its desire to avoid violating Rule 4–271, and not to violate it. Its request was

---

ly, there is nothing in the record to account for the length of the delay from October 18, 1985 to December 20, 1985, a significant factor in the good cause equation. *See Frazier,* 298 Md. at 461–62, 470 A.2d 1269.

motivated by its discovery, concededly late, that the trial date was more than 180 days after appellant's counsel had entered his appearance; its request was for an immediate trial date, one within 180 days of counsel's entry of appearance; and it represented that it was prepared for trial. The administrative judge also granted the State's request in order to avoid a violation of the Rule. Nor was the necessary effect of the request or the postponement to circumvent the Rule. It is true, of course, that appellant was tried after the 180 day period had expired; however, that did not necessarily have to be so. As indicated, the State was prepared for trial. Had service been effected on appellant, conceivably, the trial could have commenced on the reset date. Therefore, it is clear that lack of service on appellant is not dispositive and, further, that the necessary effect of the State's request and the subsequent postponement was not to circumvent the Rule.

Appellant's argument emphasizes that appellant was not served with a summons to appear on December 13th or December 16th and, in essence, asserts that any attempt at service at such a late hour was necessarily futile. Although we disagree with the breadth of appellant's argument and doubt its accuracy as to the issue of the "necessary effect" of the State's actions, we do agree that the nature and result of the efforts to effect service on appellant bear importantly on the issue of the "purpose" of the State's actions. In that regard, we agree with the trial judge's analysis of these matters in the context of determining whether the State's actions were undertaken in good faith. Before reaching that point, however, we will consider if good cause existed for the December 16th postponement.

The administrative judge's December 16th good cause finding was apparently based on the failure to serve appellant or his bondsman, although efforts to do so were made, and on appellant's non-appearance. The record before the trial judge amplifies what those efforts were. As we have seen, the trial judge agreed with the administrative judge's ruling that good cause existed for the postponement.

■ The determination whether good cause exists to postpone a criminal trial is left to the sound discretion of the administrative judge. And it is the exercise of that discretion that an appellant court reviews. *State v. Frazier*, 298 Md. 422, 450, 470 A.2d 1269 (1984). Thus, even though a Motion to Dismiss for failure to comply with Md.Rule 4–271 is presented to and resolved by a judge other than the administrative judge, that judge may not "exercise independent judgment concerning good cause for postponement." *Id.* When the issue on appeal is the propriety of the administrative judge's grant of a postponement upon finding good cause, "... [t]he burden of demonstrating a clear abuse of discretion", rests with a party aggrieved by the postponement. *Id.* at 452, 470 A.2d 1269; *Hughes v. State*, 288 Md. at 229, 421 A.2d 69 (1980).

■ What constitutes good cause to postpone a trial date depends upon the facts and circumstances of each case. *State v. Hicks, supra,* 285 Md. at 319, 403 A.2d 356. And the decision of the administrative judge, which is presumptively valid, *State v. Green, supra,* 54 Md.App. at 266, 458 A.2d 487, and accorded great deference, is " ... rarely subject to reversal upon review." *State v. Brown,* 61 Md.App. 411, 417, 486 A.2d 813 (1985). "[W]here the defendant does not appear for trial, through no fault of his own or of the State, [good cause] for a postponement would plainly appear to exist." *State v. Hicks, supra,* 285 Md. at 319, 403 A.2d 356. Appellant's failure to appear on December 16th was clearly "through no fault of his own" and, as we discuss *infra,* was not caused by any bad faith on the part of the State. Accordingly, we conclude that there was good cause for the December 16th postponement. There was no abuse of discretion.

We next consider whether appellant's failure to appear can be attributed to the State. We do not think so. We find no absence of good faith on the part of the State. While by no means susceptible to only one inference, there was ample evidence of good faith effort to notify the

bondsman of the reset trial date and to serve appellant. There was testimony that a summons was delivered to the bondsman's office on December 14th and that summonses were attempted to be served on appellant at two addresses, at one of which a summons was left with a woman who acknowledged that appellant resided there. This testimony may have been insufficient to support a finding that appellant and the bondsman actually received notice of the December 16th trial date. It does support, however, a finding that an effort was undertaken in good faith.

Finally, as the trial judge correctly observed, the record is totally devoid of any evidence of prejudice to appellant as a result of either the December 13th or December 16th rescheduling of the trial date. In the absence of a showing by appellant of actual prejudice caused by those rulings, the dismissal sanction is inapplicable. *See State v. Frazier,* 298 Md. at 452–53, 470 A.2d 1269.

Accordingly, we agree with the trial judge that the State complied with the spirit of the Rule. We are likewise satisfied that the result we reach is consistent with its purpose. *See Curley,* 299 Md. at 460, 474 A.2d 502; *Farinholt,* 298 Md. at 428, 472 A.2d 452. There was no error.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.